## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHRISTOPHE SOULIER,

                              Petitioner,

          v.

AKIKO MATSUMOTO,

                              Respondent.

Civil Action No. 20-4720 (MCA) (MAH)


OPINION

**HAMMER, United States Magistrate Judge**

Before this Court is Petitioner's motion for attorney's fees and costs (D.E. 131) incurred

in connection with his Petition (D.E. 1) pursuant to the Convention on the Civil Aspects of

International Child Abduction ("the Hague Convention") and the International Child Abduction

Remedies Act ("ICARA"). The Court has considered the motion on the papers and without oral

argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the

reasons set forth herein, the Court will grant Petitioner's motion, but will modify the amount of

the award.

### I.    BACKGROUND[1]

The underlying action arose out of Petitioner's April 21, 2020 emergency petition

pursuant to the Hague Convention and its implementing statute, ICARA (22 U.S.C. § 9001 *et*

---

[1] The parties are well familiar with the facts and history of this action. Further, United States
District Judge Madeline C. Arleo issued an Opinion and Order on July 8, 2022, D.E. 126-127,
that set forth comprehensive factual findings. This Court incorporates those factual findings by
reference, and repeats only the facts from that Opinion and the parties' briefing pertinent to
Petitioner's current motion.

*seq.*).  Petitioner sought an Order compelling the return of the parties' two children, A.L.S. and

A.H.S (both minors) (hereinafter the "Children").  Petitioner alleged that Respondent had

wrongfully removed the Children from Belgium and retained them in New Jersey.  Compl., D.E.

1.  Extensive motion practice and discovery ensued and spanned approximately two years.  From

April 27, 2022 to April 29, 2022, Judge Arleo conducted a bench trial.  On July 8, 2022, Judge

Arleo issued an Opinion and Order (D.E. 126-127) that granted Petitioner's application, and

ordered that the Children be returned to Belgium.  Judge Arleo also granted Petitioner leave to

file the instant motion for attorney's fees and costs.  Order, D.E. 127, at 2.

Petitioner and Respondent married in 2004 and primarily lived together in Belgium until

2018.  Opinion, D.E. 126, at 1.  The parties had two children together during their marriage.  *Id.*

In 2018, the parties discussed relocating to Japan; however, the relocation never materialized,

and the parties could not register their Children in their desired private school in Belgium.  *Id.*

Thus, the parties agreed that Respondent and the Children would move to New Jersey, but only

for the 2018-2019 school year.  *Id.* at 1-2.  At the conclusion of the school year, Respondent

refused to return to Belgium with the Children.  *Id.* at 2.

Petitioner filed this action on April 21, 2020, seeking the return of the Children to

Belgium and attorney's fees and costs.  In lieu of answering, Respondent filed a motion to

dismiss on May 11, 2020, based on lack of subject matter jurisdiction.  The District Court denied

Respondent's motion on December 4, 2020.  The parties then resumed contentious discovery, up

until the date of the bench trial.

Petitioner now moves for an Order awarding him reimbursement of his attorney's fees,

costs, and travel expenses necessary to secure the return of the Children to Belgium.  He argues

that under ICARA, a prevailing petitioner is presumably entitled to an award of "necessary

expenses" in securing the return of their child, unless a respondent can establish that such an award would be clearly inappropriate.  Pet'r's Moving Br., D.E. 131-2, at 6-7.  Petitioner contends that an award would not be "clearly inappropriate" because Respondent does not lack financial resources.  *Id.* at 8 (stating that Respondent has fervently litigated this matter for multiple years).  Petitioner also contends that the hours expended by counsel, and the hourly rate charged by the firm's partner ($300/hour) and its paralegals ($200/hour), are reasonable.  *Id.* at 9-10.  Lastly, Petitioner states that his travel, lodging, and transportation expenses are reasonable and were necessary in securing the return of the Children.  *Id.* at 10.  In total, Petitioner requests $89,499.53, consisting of: $84,030.00 in attorney's fees; $2,854.88 in litigation costs; and $2,614.65 for travel expenses.[2]  *See* Decl. of Michael S. Green, D.E. 131-3 ("Green Decl."); Attorney's Itemized Billing List, D.E. 131-5; Litigation Costs, D.E. 131-7; Travel Expenses, D.E. 131-8.

In opposition, Respondent argues that any such award would be clearly inappropriate for three reasons.  Resp't Opp'n, D.E. 133.  First, Respondent claims that if the Court orders an award, she would be unable to take care of, and see, the Children due to her financial status.  *Id.* at 9-18.  Specifically, Respondent argues that: (1) she was solely providing for the Children throughout the 2018-2019 school year, and thereafter throughout the litigation, *id.* at 9-10, 14; and (ii) Petitioner's income and net worth are substantially greater than hers, *id.* at 11-14, 17-18. Second, Respondent argues that she had a reasonable basis to retain the Children in New Jersey. *Id.* at 18-22.  Finally, Respondent argues that any award must be reduced because Petitioner's counsel: (i) block billed his time sheets; (ii) billed law firm partner rates for conducting

---

[2] Petitioner miscalculated the fees he seeks.  This Court's review of the travel expenses corrects the amount sought to $2,614.65, rather than the amount stated in Petitioner's counsel's Declaration, D.E. 131-3 ($2,605.65).

administrative tasks; (iii) performed tasks unnecessary to the resolution of this matter; and (iv) improperly inflated and/or charged certain fees.  *Id.* at 23-28.

In reply, Petitioner challenges Respondent's assertion of a significant financial disparity between them.  Petitioner contends that Respondent has used funds from various sources to prolong the litigation such as through motion practice and discovery disputes.  Reply Br., D.E. 137, at 7-9.  Petitioner also argues that although he may earn greater income than Respondent, he is taxed at a significantly higher rate in Belgium.  Decl. of Christophe Soulier, D.E. 137-1, ¶¶ 16-17 & Ex. A (OECD Report, "Taxing Wages-Belgium 2022").  Finally, Petitioner argues that his counsel's fees were reasonable, specifically that the block-billing entries are sufficiently detailed, that counsel was the only person at his law firm who could file the documents, and that the remaining costs were reasonable and necessary to prepare for trial and allow Petitioner to spend time with his Children.  Reply Br., D.E. 137, at 9-13.

Respondent's sur-reply reiterates the disparity of income among the parties, and restates her basis in retaining the Children.  Sur-Reply Br., D.E. 144, at 1-3.  Respondent also reaffirms that the Court should reduce any award of attorney's fees because Petitioner fails to address Respondent's objections.  *Id.*

## II.   DISCUSSION

### A.  Attorney's Fees Under the Hague Convention and ICARA

Under Article 26 of the Hague Convention, a court that orders the return of a child may impose on the individual who removed a child the "necessary expenses incurred" by the applicant.  Convention on the Civil Aspects of International Child Abduction art. 26, Oct. 25, 1980, T.I.A.S. 11670.  ICARA goes further, and mandates such an award absent a showing by the respondent that the award would be "clearly inappropriate":

> Any court ordering the return of a child pursuant to an action
> brought under section 9003 . . . shall order the respondent to pay
> necessary expenses incurred by or on behalf of the petitioner,
> including court costs, legal fees, foster home or other care during the
> course of proceedings in the action, and transportation costs related
> to the return of the child, unless the respondent establishes that such
> order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3) (emphasis added); *see also Cillikova v. Cillik*, Civ. No. 15-2823, 2016 WL 541134, at *3 (D.N.J. Feb. 9, 2016). Therefore, it is presumed that a prevailing ICARA petitioner will be awarded fees, unless the respondent establishes that the award would be clearly inappropriate. *Cillikova*, 2016 WL 541134, at *3 (collecting cases). "The purpose of awarding a successful ICARA petitioner expenses is both to restore the petitioner to the financial position he or she would have been in absent the litigation and to deter the respondent from violating ICARA." *Id.*

To determine whether the award demanded by the prevailing party would be clearly inappropriate, courts assess the opposing party's financial circumstances, and whether such an award would significantly impair that party's ability to provide for the child. *See id.* at *5;[3] *Hirts v. Hirts*, 152 F. App'x 137, 139 (3d Cir. 2005) (affirming the district court's reduction of an ICARA award based on respondent's financial circumstances); *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004) (stating, "preserving the ability of a respondent to care for her child is an important factor to consider"). Courts also consider a respondent's basis for removing and/or retaining the child. *See, e.g., Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013); *Clarke v. Clarke*, Civ. No. 08-690, 2008 WL 5191682, at *3 (E.D. Pa. Dec. 11, 2008) (considering respondent's

---

[3] In *Cillikova*, the court considered the respondent's financial situation, rather than the disparity of income among the parties. *Cillikova,* 2016 WL 541134, at *5.

"motivation in creating the need for a Hague Convention petition").[4]  District courts also may apply equitable principles in determining such fees.  *See Ozaltin*, 708 F.3d at 375 ("[T]he appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'") (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)); *Whallon*, 356 F.3d at 140 (reading ICARA "as giving the district court broad discretion in its effort to comply with the Hague Convention consistently with our own laws and standards").

### B.  Analysis of the Application for Fees and Costs

Petitioner's application for fees can be broken down into three categories: (1) attorney's fees; (2) travel and lodging expenses; and (3) litigation expenses, comprising of printing costs related to transcripts, filing fees, and copying fees (hereinafter "costs").  The Undersigned addresses each category in order.

#### 1.  Petitioner's Attorney's Fees

Petitioner seeks an Order awarding $84,030.00 in attorney's fees, which he divided into two categories: approximately 278.43 hours at $300 per hour for work by lead counsel Michael S. Green, Esq., and 2.5 hours at $200 per hour for work by paralegals Steve Murawski and Sandra Takach.  *See* Green Decl., D.E. 131-3; Attorney's Itemized Billing List, D.E. 131-5.  Respondent argues that any award would be clearly inappropriate because of her financial circumstances and because of her reasonable basis in removing and retaining the Children.  In

---

[4] Some courts have relied on other circumstances to conclude that an award was clearly inappropriate.  *See, e.g., Souratgra v. Lee Jen Fair*, 818 F.3d 72 (2d Cir. 2016) (holding that even though father-petitioner successfully petitioned for the return of his child under ICARA, an award of expenses would be clearly inappropriate given his instances of intimate partner violence against the mother).  Those considerations do not apply in this matter.

the alternative, Respondent contends that any such award must be reduced because counsel's fees are not reasonable.

### a.  Whether Petitioner's fees are Necessary and Reasonable

As a preliminary issue, the Undersigned addresses whether Petitioner's attorney's fees were necessary and reasonable.  The lodestar method is the proper method in conducting such assessment.  *Cillikova*, 2016 WL 541134, at *4 (multiplying "the number of hours reasonably expended by a reasonable hourly rate"); *Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).  Petitioner "bears the burden of establishing the necessity of the work performed and the reasonableness of the rates charged, and, once an initial showing is made, the Respondent may then raise specific objections."  *Cillikova*, 2016 WL 541134, at *4 (citing *Paulus ex rel. P.F.V. v. Cordero*, Civ. No. 12-986, 2013 WL 432769, at *6 (M.D. Pa. Feb. 1, 2013)).  The Court has "significant discretion to adjust the lodestar downwards."  *Paulus*, 2013 WL 432769, at *6.

Respondent does not challenge the reasonableness of Petitioner's attorney's rates, nor those of the firm's paralegals.[5]  Petitioner offered the qualifications of the firm's counsel and its paralegals, Green Decl., D.E. 131-3, ¶¶ 3-4; Attorney's Firm Biography, D.E. 131-6, and cited one case for the prevailing rate, *see Distler*, 26 F. Supp. 2d at 727.  The Court is satisfied that Petitioner's supplied rates are reasonable, both because Respondent does not challenge them, and because the rate cited by Petitioner is in line with similar cases.  *See Distler*, 26 F. Supp. 2d at 727 (finding $350 rate for lead attorney reasonable in 1998); *Grano v. Martin*, Civ. No. 19-6970,

---

[5] Caselaw within the Third Circuit establishes that the opponent must take the first step in challenging the adversary's hourly rates: "The Third Circuit has been explicit about the opponent's burden [in contesting hourly rates]" and has previously cautioned that "the district court 'may not exercise its discretion to adjust the requested rate downward'" where no challenge is made.  *T.B. v. Mount Laurel Bd. of Educ.*, Civ. No. 09-4780, 2012 WL 1079088, at *4 (D.N.J. Mar. 30, 2012) (quoting *Washington v. Phila. Ct. of Common Pleas*, 89 F.2d 1031, 1036 (3d Cir. 1996)).

2021 WL 3500164, at *3-4 (S.D.N.Y. Aug. 9, 2021) (finding reduced attorney's rates of $375, $400, and $425 reasonable in an ICARA case); *see also Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001) (stating that, absent evidence contesting the hourly rate, "plaintiff must be awarded attorneys' fees at [the] requested rate").

The Court has reviewed Petitioner's documentation supporting his request for attorney's fees (Attorney's Itemized Billing List, D.E. 131-5), line-by-line, as it must. *Evans*, 273 F.3d at 362. Respondent argues that Petitioner's fees are not reasonable for four reasons: (i) Petitioner's counsel block billed his timesheets, thus making it impossible to correlate the time spent to the task performed; (ii) Petitioner's counsel performed administrative tasks but billed a partner rate; (iii) Petitioner's counsel performed tasks unnecessary to the resolution of this matter; and (iv) Petitioner's counsel improperly inflated certain fees. Resp't Opp'n, D.E. 133, at 23-28. The Court addresses each in turn.

*First*, Respondent takes issue with Petitioner's counsel's descriptions in various block billed entries. Respondent specifically calls attention to 68 block-billed entries, which include a vague "review of file" description, or some variation thereof. *Id.* at 25-26. As Respondent admits, however, block billing "will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed." *Id.* at 24 (citing *United States v. NCH Corp.*, Civ. Nos. 98-5268, 05-881, 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010)). The Third Circuit recognizes block billing as a "common practice" and courts must "look at the entire block, comparing the listed activities and the time spent, and determining whether the hours reasonably correlate to all of the activities performed." *NCH Corp.*, 2010 WL 3703756, at *4. In essence, the Court must ascertain whether the "hours claimed are unreasonable for the work performed."

*Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)).

Here, the Court finds that 68 of the approximately 147 entries that counsel vaguely described as "review of file" (or some variation thereof) were redundant and excessive. It is reasonable to assume that at least some review was necessary, such as in preparation for a deposition or trial. Accordingly, the Court shall reduce 50 of the 68 entries by one-tenth (1/10) of an hour—in total, reducing the amount billed by $1,500.[6] The Court is satisfied, however, that Petitioner's counsel has otherwise provided sufficient detail in the block-billed descriptions for those entries to reasonably correlate the hours expended to the tasks performed. For example, the March 17, 2020 entry states: "draft petition for federal court, review of file, review of state court motion for reconsideration and all exhibits, review of transcript from state court decision on motion for reconsideration," and bills 9.5 hours for the tasks. Attorney's Itemized Billing List, D.E. 131-5, at 2. The Court can reasonably infer that the majority of the time spent in the block-billed entry relates to drafting of the petition, for which the time expended appears reasonable. The Court's review of other block-billed entries similarly reveals that the hours reasonably correlate to, and are justified by, the activities performed.[7] Thus, the Court shall reduce the block-billed entries for use of the vague "review of file" description, but otherwise concludes that the block-billed entries are reasonable in terms of the time expended on the tasks performed.

---

[6] 50 entries x 0.1-hour reduction x $300 partner rate = $1,500.

[7] By way of further example, Petitioner's counsel's January 6, 2021 entry states: "draft discovery requests, interrogatories and notice to produce documents, emails to/from client, reviews of revisions, review of file," and bills 2.5 hours for the tasks. The Court is satisfied that the tasks described in the blocked bill reasonably correlate to the number of hours expended.

**Second,** Respondent asserts that Petitioner's counsel should not be allowed to charge his partner rate for tasks that non-lawyers could have performed. Resp't Opp'n, D.E. 133, at 24. The Court agrees. "A claim by a lawyer for maximum rates for . . . tasks [that can be] performed by administrative assistants, paralegals, or secretaries" is unreasonable. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *see also Cox v. Elite Energy LLC*, Civ. No. 09-444, 2011 WL 4406364, at *4 (D.N.J. Sept. 21, 2011) ("Many of the tasks . . . such as outlining deposition transcripts, culling exhibits . . . could have been performed by a paralegal or administrative assistant."). Petitioner's billing entries are rife with tasks that could have been performed, and billed for, by counsel's paralegals. The activities at issue here consist of scanning exhibits, setting up for filing, making hard copies, calendaring events, transferring documents, collating exhibits, preparing citations, etc. [8] Attorney's Itemized Billing List, D.E. 131-5. The Court cannot credit Petitioner's counsel's claim that he is the only one he trusts in his office to perform these tasks. Reply Br., D.E. 137, at 12. For example, Counsel does not sufficiently explain why his paralegal staff could not have been entrusted with the relatively ministerial task of scanning exhibits for filing. For the reasons set forth above, the Court will reduce the following entries. [9]

| Entry Date | Total Billed Time at Partner Rate | Time After Deduction |
|:---:|:---:|:---:|
| 4/6/2020 | $1,350.00 | $1,250.00 |
| 4/21/2020 | $540.00 | $440.00 |

---

[8] By way of example, the April 6, 2020 entry states, in part, "scan of all exhibits for filing," and is billed at the partner's rate. D.E. 131-5, at 2. The April 21, 2020 entry lists tasks related to filing of the Petition and scanning exhibits. *Id.* As does the June 3, 2020 entry. *Id.*

[9] Some of the entries were reduced by $100, the difference in rates between the firm's partner and its paralegals. Other entries, for example the May 25, 2022 block-billed entry, were further reduced where the Court concludes those tasks may have taken longer than one hour. The July 28, 2022 entry, however, was reduced less due to the miniscule task. D.E. 131-5.

| Entry Date | Total Billed Time at Partner Rate | Time After Deduction |
|---|---|---|
| 6/2/2020 | $2,910.00 | $2,810.00 |
| 6/3/2020 | $2,460.00 | $2,260.00 |
| 12/18/2020 | $390.00 | $290.00 |
| 2/12/2021 | $660.00 | $560.00 |
| 2/19/2021 | $2,640.00 | $2,540.00 |
| 4/25/2022 | $4,350.00 | $4,250.00 |
| 4/26/2022 | $2,310.00 | $2,110.00 |
| 5/25/2022 | $4,290.00 | $3,990.00 |
| 7/28/2022 | $240.00 | $200.00 |

*Third,* Respondent states that Petitioner's counsel performed tasks unnecessary to the resolution of this matter.  Resp't Opp'n, D.E. 133, at 27-28 (referencing D.E. 131-5 entries 3/17/20; 10/16/20; 11/17/20; 12/21/20; 1/19/21; 6/1/21; 12/8/21; and 8/1/22).  The Court agrees in part.  "[A] court awarding fees must 'decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are . . . unnecessary.'"  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005); *Cf.* 22 U.S.C. § 9007(b)(3) (fees awarded under ICARA must be "necessary" in securing the return of the child).  By way of example, fees billed regarding visitation during the pendency of the action are not necessary to securing the return of the children.  *Aldinger v. Segler*, 157 F. App'x 317, 318 (1st Cir. 2005).

At least some of counsel's entries are not necessary.  These entries fall into three general categories, all of which were unnecessary: review of materials pre-dating this action*; Petitioner's planned visits with the Children**; and Petitioner's review of Respondent's letters to the New Jersey Appellate Division***.[10]  For example, the entry dated March 17, 2020 states

---

[10] The Court identifies each example by asterisks in the corresponding chart.

that counsel reviewed transcripts from the state court decision, which was dismissed and preceded this action. Attorney's Itemized Billing List, D.E. 131-5, at 2. The Court does not dispute Petitioner's claim that such review was necessary to respond to Respondent's motion to dismiss. Reply Br., D.E. 137, at 12-13. However, the Court finds that the entry/review, which well preceded Petitioner's opposition to Respondent's motion to dismiss, was unnecessary. Other entries, such as November 23 and 29, 2021, relate to Petitioner's visitation to the United States and his planned trip to Florida with the Children. The November 17, 2020 entry is just one example whereby Petitioner reviews Respondent's letter to the New Jersey Appellate Division, but does not adequately explain the necessity of that task to furthering this litigation. Accordingly, the Court will reduce the following entries, or eliminate them entirely:

| Entry Date | Total Billed Amount | Total After Deduction |
|---|---|---|
| 3/17/2020* | $2,850 | $2,250 (reduced 2 hours) |
| 10/16/2020*** | $60 | $0 |
| 11/17/2020*** | $180 | $150 (reduced 0.1) |
| 12/21/2020*** | $150 | $120 (reduced 0.1) |
| 1/19/2021*** | $60 | $0 |
| 6/1/2021*** | $60 | $30 (reduced 0.1) |
| 8/2/2021** | $30 | $0 |
| 11/23/2021** | $240 | $120 (reduced 0.4) |
| 11/29/2021** | $390 | $0 |
| 12/8/2021*** | $60 | $0 |
| 8/1/2022*** | $1,170 | $1,110 (reduced 0.2) |

**Fourth**, Respondent argues that the time billed is excessive and unreasonable. Resp't Opp'n, D.E. 133, at 28. Respondent points to only one example—that Petitioner's opposition to Respondent's motion to dismiss "took 37 hours and 36 minutes to draft and file same." *Id.*

Although Respondent did not bring other entries to the Court's attention, the Undersigned has reviewed Petitioner's counsel's entries. The Court first notes that Respondent's submission in support of her motion to dismiss totaled 828 pages and attached numerous exhibits. *See* Motion to Dismiss, D.E. 6. Of that filing, Respondent's brief accounted for forty-two (42) of the 828 pages. The Court does not doubt that Petitioner had to review the entire filing in order to respond. Opp'n to Motion to Dismiss, D.E. 10 (responsive filing totaling fifty-three (53) pages). The motion was complex, as it asserted, among other things, that the Court should not exercise jurisdiction pursuant to the *Rooker-Feldman* doctrine, *Younger* abstention, and international comity. Br. in Support of Motion to Dismiss, D.E. 6-13, at 8-20. Respondent's remaining arguments were similarly complex. *See id.* at 21-40 (arguing that Petitioner's Hauge Convention Petition must fail as the Children's habitual residence prior to the wrongful retention was New Jersey). A review of Petitioner's opposing papers suggests that Petitioner's counsel expended considerable time in responding to those arguments. Nonetheless, the Court finds that at least some of the time billed for filing the opposition papers was excessive and warrants a reduction. The Court concludes that a ten-hour reduction is appropriate, resulting in a net total of 27.6 hours (a net reduction of $3,000).[11] *See NCH Corp.*, 2010 WL 3703756, at *6 (reducing attorney's fees on a motion to dismiss by 20%). However, the Court is satisfied that the remaining entries are reasonable.

After accounting for the reductions via the lodestar analysis above, the Undersigned respectfully recommends that Petitioner's attorney's fees be reduced to **$76,620.00**.[12]

---

[11] 10 hours at the partner's $300 rate = $3,000.

[12] The Court reduced $1,500 for "review time", $1,440 for administrative tasks billed at a partner's rate, $1,470 for unnecessary time billed, and $3,000 for excessive time billed, totaling $7,410 in lodestar reductions. In sum, $84,030 (requested) - $7,410 = $76,620.

### b. Whether Respondent has Demonstrated that Petitioner's Claimed Attorney's Fees are Clearly Inappropriate

Having determined that Petitioner is entitled to attorney's fees, albeit in a reduced sum, the Court next considers whether Respondent has demonstrated that Petitioner's application for attorney's fees is nevertheless clearly inappropriate. 22 U.S.C. § 9007(b)(3). Respondent advances two arguments: (1) that she had a reasonable basis for retaining the Children, Resp't Opp'n, D.E. 133, at 18-22;[13] and (2) that such an award would be clearly inappropriate due to her financial circumstances and the disparity in the parties' incomes and assets, *id.* at 9-18.

The Court rejects Respondent's first argument outright. Respondent relies on *Clarke v. Clarke*, Civ. No. 08-690, 2008 WL 5191682, *3 (E.D. Pa. Dec. 11, 2008). There, the petitioner sought the return of his children to Sydney, Australia from Pennsylvania, after the respondent had taken the children from Australia to visit respondent's mother in Pennsylvania and did not return. Following a hearing, the district court ordered that the children be returned to Australia. Petitioner then moved for attorney's fees. The court concluded that much of the billing was excessive given that "[t]here was no discovery, no significant motions and the legal and factual issues were not highly complicated." *Id.* at *1. The court also suggested that respondent's financial situation was sufficiently dire that it might be a factor in assessing what fees to impose, once petitioner's counsel revised its "profoundly unreasonable bill" and submitted a new one to the court. *Id.* at *4. On the issue of whether the respondent was justified in removing the children, the *Clarke* court found that the respondent had a good faith belief in keeping the

---

[13] To the extent Respondent attempts to relitigate whether the Children were wrongfully removed and retained, the Court will not entertain such arguments. *See, e.g.,* D.E. 133, at 18 ("It is not even truly a 'wrongful retention.'").

children in Pennsylvania, because of stress, the influence of respondent's family and therapist on her and her children, and a misinterpretation of her child's behavior. *Id.* at *3.

Here, Respondent and Petitioner agreed that the Children would return to Belgium following the 2018-2019 school year. Opinion, D.E. 126, at 2. Unlike *Clarke*, Respondent offers little else to supplement her "reasonable basis" in retaining the Children. *Contra Ozaltin*, 708 F.3d at 376 (having a reasonable belief in removing the children from Turkey based on that country's law). Further, analysis of Judge Arleo's July 8, 2022 Opinion offers little to support Respondent's reasonable basis argument. In fact, when Respondent testified at the hearing concerning her reasons for not returning the Children to Belgium, Judge Arleo found some of her testimony to be "not credible for multiple reasons[,]" Opinion, D.E. 126, at 21, including that Respondent's testimony contained inherent inconsistencies and was contradicted by other evidence showing that "once it became clear that securing a new job in New Jersey was not feasible for Petitioner—whether it was because of the high-ranking J&J executive preventing him from getting a job or other reasons—the shared intent was for Respondent and the children to rejoin Petitioner in Brussels in July 2019." *Id.* at 22. Judge Arleo also rejected Respondent's contention that A.L.S. had the perception that she would remain in New Jersey for the long term. *Id.* at 23-24. Instead, Judge Arleo found, "the family discussions regarding staying in New Jersey were always conditioned around Petitioner securing a job there, and it would have been clear from the children's perspective that the stay in New Jersey was temporary and not their forever home." *Id.* at 24. Finally, Judge Arleo rejected each of the four affirmative defenses that Respondent raised. *Id.* at 25-29. Judge Arleo noted that the facts of this case "fall far short" of the affirmative defense of grave risk or intolerable situation. *Id.* at 26. On the affirmative defense of consent or acquiescence, Her Honor noted that there was "no evidence in the record"

that Petitioner filed the action in retaliation.  *Id.* at 27.  Judge Arleo quickly disposed of the

affirmative defense of well-settled exception.  *Id.* at 28.  Her Honor squarely rejected the mature-

child objection, noting that its application "would improperly reward Respondent for violating

Petitioner's custody rights and encourage parents to wrongfully retain a child for as long as

possible."  *Id.* at 29.  Finally, the measures Respondent took after the action was filed (*e.g.*,

providing opportunities for Petitioner to visit, setting up FaceTime calls, etc., *see* Resp't Opp'n,

D.E. 133, at 19-21), while perhaps commendable in some fashion, are not relevant to this Court's

analysis.

The Court next considers whether Respondent has shown that an award would be clearly

inappropriate because of her financial circumstances.  Specifically, the Court looks to whether "a

large award of expenses could potentially impair the respondent's ability to provide for the

child."  *Cillikova*, 2016 WL 541134, at *5 (collecting cases from the Court of Appeals for the

First, Third, and Eight Circuits).[14]

---

[14] Although the parties cite the six *Cillikova* factors in arguing whether an award would be
clearly inappropriate, and Respondent spends a great portion of her opposition discussing the
parties' financial disparity (D.E. 133, at 9-18; D.E. 144, at 1), the Court finds that the proper
inquiry is whether Respondent's financial situation permits her to provide for the Children.
*Cillikova*, 2016 WL 541134, at *5 ("[C]aselaw supports at least considering the financial
situation *of the respondent*"); *Hirts*, 152 F' App'x at 139 ("The District Court . . . reduced the
award . . . upon consideration of [Respondents'] financial circumstances."); *Whallon*, 356 F.3d at
139-40 (same); *Rydder v. Rydder*, 49 F.3d 369, 373-74 (8th Cir. 1995) (same).  Respondent
admits such, stating, "these factors are not all necessarily supported explicitly in law," and
further arguing that courts look to Respondent's financial circumstances.  D.E. 133, at 7-8.

Nevertheless, and out of abundance of caution, the Court notes that even if it did consider the six
*Cillikova* factors, particularly the disparity of income amongst the parties, the result here would
not change.  Respondent's financials as compared to Petitioner's does not absolve her of her
responsibility under ICARA to pay the prevailing petitioner's attorney's fees, absent a showing
that such an award would be clearly inappropriate.  22 U.S.C. § 9007(b)(3).

Respondent has submitted ample evidence of her financial status.  *See, e.g.,* Decl. of

Akiko Matsumoto, D.E. 133-1.  In 2021, she earned $79,835 (gross salary) as a teacher.  *Id.* ¶ 14.

Respondent also claims that she solely provided for the Children through the duration of this

litigation.  *Id.* ¶ 13.  As a result of the parties' postnuptial agreement in 2019, Respondent

received a total of €160,000 (though the payment was delayed).  *Id.* ¶¶ 5, 16.  However, only

€30,000 of that remains.  *Id.* ¶ 17.  Other than these assets, Respondent has a few personal items

and a 2015 Mazda 3, which she purchased used in 2019.  Resp't Opp'n, D.E. 133, at 13.

Petitioner submits that Respondent's depiction of her financial situation is belied by the

contentious and protracted manner in which she litigated this action.  First, Petitioner argues that

Respondent has fervently litigated this case for nearly three years.  Reply Br., D.E. 137, at 7.

Petitioner also claims that Respondent "used life insurance money from her father for the

litigation."  *Id.*  Moreover, she received "lump-sums of monies from the Petitioner that . . . she

devoted to the litigation."  *Id.*  Lastly, Respondent lived rent-free at her parents' home in New

Jersey, and thus, had few expenses.  *Id.*

This Court is mindful of Respondent's financial situation and of the potential harm that a

large attorney's fees award may cause in her ability to care for the Children.  However, the Court

must also bear in mind the purpose behind ICARA and the Hague Convention, as well as the

presumption in favor of an award of attorney's fees for a prevailing petitioner in removal actions.

Having considered the parties' arguments, together with the purpose behind the

legislation, the Court will reduce the attorney's fees by 20%.  First, while Respondent is

employed and lived with her parents through the litigation, Resp't Opp'n, D.E. 133, at 10, she

has few assets.  *Hirts*, 152 F. App'x at 139 (affirming the district court's reduction of an award

from the $37,744.24 petitioner originally sought to $20,000, in part, because of respondent's

strained financials: she had few assets and employment prospects, was residing in a homeless

shelter, and was receiving government assistance); *Rydder*, 49 F.3d at 373-74 (reducing award

by 46% because respondent owned approximately $19,000 in assets and had worked sporadically

as a substitute teacher); *Whallon*, 356 F.3d at 139 (affirming district court's opinion that an

award would be clearly inappropriate where respondent would not be able to pay for it, was

unemployed, and had been living on loans from family and friends).  Second, taking care of the

Children may require that Respondent travel to Europe, or the Children visit the United States.

Also, it is not apparent to the Court whether Respondent will have any financial obligations

related to the Children after the parties resolve their custody dispute.  Resp't Opp'n, D.E. 133, at

14.  Thus, the Undersigned finds that a reduction is warranted in the amount of $15,324.00 (20%

of the Court's reduced total from its analysis, *supra* Section II.B.1.a).

Accordingly, the Court awards Petitioner's attorney's fees in the amount of **$61,296.00**.[15]

## 2.  Petitioner's Travel Expenses

The Court next considers Petitioner's travel expenses incurred in securing the return of

the Children: $965 in airfare; $1,455.29 in lodging expenses; and $194.36 in rental car charges

(totaling $2,614.65).  Pet'r's Moving Br., D.E. 131-2, at 10; Green Decl., D.E. 131-3, ¶ 8; Travel

Expenses, D.E. 131-8, at 2.  As noted above, ICARA mandates an award of "necessary

expenses," including "transportation costs related to the return of the child," unless Respondent

can show that such an award is "clearly inappropriate."  22 U.S.C. § 9007(b)(3); *see also*

*Cillikova*, 2016 WL 541134, at *3 (awarding $2,765.07 in travel and lodging costs); *Paulus*,

---

[15] $84,030 (requested) - $7,410 (reduced via lodestar) - $15,324 (20% reduction based on consideration of Respondent's financial circumstances) = $61,296.

2013 WL 432769, at *4 ("[F]ederal courts have awarded successful ICARA petitioners airfare . . . to appear in court.") (collecting cases).

This Court has reviewed the supporting documentation for each of these claimed costs, *see* Travel Expenses, D.E. 131-8, and finds that these expenses were necessary and reasonable, for the most part, to Petitioner's efforts in securing the return of the Children to Belgium under the Hague Convention.  First, the Undersigned is satisfied that the $194.36 expense incurred for the rental vehicle is appropriate, notwithstanding Respondent's argument that Petitioner rented a "luxury car."  Resp't Opp'n, D.E. 133, at 28.  Petitioner's receipt indicates that he was charged for an "intermediate" vehicle group, specifically a Chrysler 300, despite the rental car class being designated as "luxury."  Travel Expenses, D.E. 131-8, at 2 (Avis invoice).  Additionally, the Court's own exercise in reviewing car-rental costs for similar time spans did not yield charges dissimilar to those paid by Petitioner.[16]

The Court is also satisfied that Petitioner's entire airfare costs and a portion of his lodging expenses were reasonable and necessary.  Respondent argues that Petitioner spent seven days in the States for a three-day trial.  Petitioner arrived in the United States on Sunday, April 24, 2022.  Trial commenced on Wednesday, April 27, 2022.  Petitioner returned to Belgium, and presumably checked out of the hotel, on Sunday, May 1, 2022.  That Petitioner arrived on April 24th is reasonable, insofar as he arrived two full days before trial to meet with counsel to prepare for trial.  However, the Court concludes that it would be inconsistent with the standard—*i.e.*, expenses necessarily incurred in securing the return of the children—to require Respondent to pay for Petitioner's stay through the weekend following the conclusion of the trial.  Although the

---

[16] For example, the Court's review of Avis's website for a three-day car rental produced results within a few dollars of the invoice attached by Petitioner.

Court can certainly appreciate Petitioner's desire to spend time with his Children, his testimony, and the hearing itself, had concluded. *See Paulus*, 2013 WL 432769, at *3 (reducing lodging expenses from four to two nights, by removing the charges from the weekend before the hearing). Accordingly, the Court finds it reasonable for Respondent to pay for six of the seven nights for lodging. The lodging expense is accordingly reduced from $1,455.29 to $1,247.39. Thus, the Undersigned respectfully awards Petitioner **$2,406.75** in travel expenses.

### 3. Petitioner's Litigation Costs

Finally, the Court addresses Petitioner's costs, totaling $2,854.88. *See* Green Decl., D.E. 131-3, ¶ 7; Litigation Costs, D.E. 131-7, at 2. Respondent argues that Petitioner's costs are unrelated to the underlying action and that the entries related to the printing of transcripts and copying fail to specify the number of pages or costs per page, therefore "making it impossible to determine if the copy charge was reasonable." Resp't Opp'n, D.E. 133, at 26-28. Petitioner responds that the costs sought include "transcripts, copying and binders for trial." Reply Br., D.E. 137, at 11. He further avers that the costs related to the New Jersey State Court action (dismissed) were necessary to put before the District Court because Respondent placed that case at issue in her motion to dismiss. *Id.* at 12-13.

"Photocopying costs have been allowed as costs to the extent that the copies are used as court exhibits or were furnished to the court or the opposing counsel, but money spent to copy documents for the litigant's own use are not recoverable." *Grano*, 2021 WL 3500164, at *7 (internal quotation marks and alterations omitted) (reducing expenses by 90% because "there is no way to reasonably evaluate the purpose of these costs"); *Freier v. Freier*, 985 F. Supp. 710, 713 (E.D. Mich. 1997).

Having reviewed Petitioner's documentation, Litigation Costs, D.E. 131-7, at 2, the Court finds that only some of the entries were necessary expenses.  First, the Court finds that the April 21, 2020 filing fee ($400) and mailing of the petition to Respondent ($50) were necessary and reasonable.  *Id.*  Second, the May 2, 2022 entry relating to the $1,587 transcript fee is also reasonable.  *Id.*  However, it is unclear whether the remaining entries (February 18, 2020, November 30, 2021, and April 23, 2022) were for Petitioner's own use, or whether they were used before the District Court.  Because the Undersigned cannot reasonably evaluate the purpose of those expenses, the Court will reduce the costs by 90%.  *See Grano*, 2021 WL 3500164, at *7.  Accordingly, the Court awards Petitioner litigation expenses in the amount of **$2,118.79**.[17]

### III.    CONCLUSION

For the foregoing reasons, the Court grants Petitioner's motion for attorney's fees and costs in the reduced amount of **$65,821.54**, consisting of: $61,296.00 in attorney's fees; $2,406.75 in travel expenses; and $2,118.79 in costs.

An Order accompanies this Opinion.

*s/ Michael A. Hammer*
Hon. Michael A. Hammer,
United States Magistrate Judge

**DATED**:  November 28, 2022

---

[17] The Court concludes that $450 from the April 21, 2020 entries, and $1,587 in the May 2, 2022 entry, remain in full (in total, $2,037.00).  The Court thereafter applies a 90% reduction to the remaining entries: $817.88 * (1-0.9) = $81.79.  In sum, $2,037.00 + $81.79 = $2,118.79.